O’Neall, J.
The various objections raised to the Circuit decree, make the following questions. 1st. Is the plaintiff on the case proved on his part, entitled to any relief against the defendants ? 2d. If he is, are the defendants bound to account for the proceeds, if they have paid them away before notice of his claim.
I am satisfied that the plaintiff is properly in Court, and * entitled to have the benefit of his interest in the cargo of the Eliza, if the fund is still in the hands of the defendants, or if it has been paid away after notice of his claim. This assumes, however, as true, that the right of action is in Plunkett in the character in which he sues. This assumption may, upon the examination before the Commissioner, turn out not to be well founded, and if so, it. is not intended that the defendants should in that respect be prejudiced by( it.
*120 1. There can, I think, be no doubt as against Lewis, that the plaintiff would have been entitled to the aid of this Court, to have given him in specie, or in an account, the benefit of his interest in the cargo of the Eliza. For to say nothing of other grounds of equitable cognizance of the case, which I may have occasion to notice hereafter, the legal right to the cargo was in Lewis, and the plaintiff’s right to participate in it, rested altogether in agreement. This was clearly an equity. For it is no objection to say, you might have sued on it at law. There are many cases you may sue at law, and yet the jurisdiction in equity is unquestionable. This is pretty much the case in all cases of specific performance of contracts ; at law, you may have your remedy in damages ; or in equity, for specific performance. So, when there is a contract to divide property in specie, or to divide the proceeds; I should entertain no doubt, that on the party’s refusing to perform his contract, an action for damages might be sustained at law; -and in equity, that a bill would lie in the one case for a partition of the property, and in the other, for an account of the proceeds. Under the agreement of Lewis, the complainant as against him, might possibly have obtained an actual apportionment and division of the cargo. If, however, that was doubtful, (which I do not think,) there can be no doubt that he would be entitled to an account of his proportionate share of the cargo. I have said that the legal title was in Lewis, and it may be necessary to. assign the reasons for this assertion, before I proceed further. The invoice and bills of lading were in his name, and he had the actual possession; and all these combined together, are more than enough to give a legal title to merchandise. The plaintiff was merely, by a contract on a valuable consideration, entitled to a share, *in proportion to the amount of his funds invested. This gave him the right in equity and good conscience, to a share of the adventure. The defendants, as regards their legal rights to the property, stand exactly upon the same footing which Lewis did ; and I apprehend they take it subject to the equities which existed against him, and must account for it as he would have done, unless they have paid away the proceeds before notice. This qualification constitutes the only difference between him and them. For they represent him, and are not entitled to any privileges, (with the exception I have already made) which he could not claim. For the purposes of this question, they are to be regarded as volunteers. I proceed now to show, that as against the defendants, the doctrines of the Court of Equity, sanctioned by the authority of repeated decisions, sustain the position that the complainant is entitled to relief in this Court, on the agreement of a proportionate share of the cargo of the Eliza. In the case of Legard v. Hodges, the Lord Chancellor states the general rule as a maxim in equity, “that whenever persons agree concerning any particular subject, that, in a Court of Equity, as against the party himself and any claiming under him voluntarily or with notice, raises a trust;” 1 Ves. jr. 478. This, as a general rule, is perhaps a little too broadly stated, for it is not intended by it to say, that a mere personal contract or agreement would create a trust, and give the Court of Equity jurisdiction. But if the agreement is intended to operate on a subject or property specifically, so as to create an interest in the thing itself, it would fall properly under the rule. In the case in hand, the defendant’s *121 principal agrees with the plaintiff, that he should have an interest in the brig Eliza’s cargo, in proportion to the sum of $1225 51 of his funds invested. This agreement was intended to operate on the cargo itself, and makes the plaintiff the equitable owner to that extent, and the defendant’s principal, a trustee, holding the legal title for the use created by his own agreement.
This is analogous to the case of a bill filed for an account and distribution of prizes captured by a privateer, among the officers, crews, and owner, according to the articles. In such a case there is no doubt of the equity jurisdiction, and *for a precedent of such a case, I refer to the case of Good v. Blewitt, 13 Ves. 397; and for another of a similar character, where an account was claimed by officers of the army, of prizes under the King’s grant, I refer to the case of Brown v. Harris, 13 Ves. 552. The jurisdiction in these cases was sustained on the principle, that the agreement in the one, and in the other the grant, gave the claimants a right to shares in the prizes themselves, and hence that they were entitled to the account as co-tenants The principle, I take it, reaches this ease; the agreement here, gives an interest in the cargo itself, and in equity, Lewis and the plaintiff are co tenants. The case of Weymouth v. Boyer, 1 Ves. jr. 416, it seems to me is the very case before the Court, and it has the singular advantage of being decided in Chancery, by one of the most eminent of the English Law Judges, Mr. Justice Buller, sitting for the Lord Chancellor. Bryant and Tewksbury were indebted to Weymouth; he pressed Bryant for payment, and he agreed to sell him 45 hogsheads of tobacco, to be accounted for by him in part of his demand. An invoice was mutually signed with a memorandum of the sale, but before they parted, Weymouth proposing Holder as his factor to sell the tobacco, Bryant objected, and it was agreed that the whole should be sold by Williams, factor for Bryant, and an agreement for this, purpose was accordingly signed by both. The tobacco was subsequently delivered to Williams, under an order from both Bryant and Weymouth; Williams sold the tobacco, and claimed to retain the proceeds for a debt due to him by Bryant and Tewksbury. It was contended there, as it has been here, that the remedy was at law, but the objection was overruled, and the reasons of Mr. Justice Buller, in support of the jurisdiction, at p. 424, are a full answer to the arguments pressed with so much ingenuity on us in this case. Upon the merits, his views of the case are so directly applicable to this, that they may be stated and used as argument for the plaintiff.
“ I think, upon the whole, this must be considered as a case in which the plaintiff has not the strict legal property, but rests upon an agreement to be properly enforced here. I found that, on observations occurring upon this invoice,* signed by the plaintiff and Bryant. The intention was, that there should be an actual sale, and that the property really should pass to the plaintiff; and that is the purport of the memorandum made on the paper stating that the plaintiff had bought 25 hogsheads of tobacco, specified by numbers, which memorandum was signed by both parties. I should have said that was a transfer of the property, if it had rested there. That was dated 1st July, 1185. But it is apparent upon that, that they altered their plan, and came to a new agreement before they parted, which it was competent for them to do, *122 and the reason was, the question, who should be the factors. The plaintiff had spoken to Holder, Bryant objected to that, and said, ‘ let them all be sold by Williams, and we will account for the 45 hogsheads,’ an dan agreement was accordingly signed for that purpose. That reduces the case, to a case of agreement only, in order to let the friend of Bryant have the selling of the goods. If it rests upon agreement, the plaintiff cannot go elsewhere.”
The defendant was held liable to account for the proceeds of the sale of the tobacco. The agreement here, as in that case, was intended to convey property to the plaintiff; but it does not have that effect in law. The plaintiff’s rights are in agreement only; and it follows, that his only relief is in equity; and he is entitled to an account for his share of the proceeds, unless his laches has defeated that right. This brings us to consider the second question.
2. The assignment is to Carew & Trescott, of all Lewis’ estate, including the Eliza’s adventure, which is set down at $5,500. It may be that this did not include the plaintiff’s interest, and if so, that may possibly present another question, whether the defendants, if they have possessed themselves of the plaintiff’s share without any authority from Lewis, would not be, in any event, liable for the .proceeds ? If there is any doubt in relation to this matter, the plaintiff may, on the reference if he choose, show that the assignment did not authorize the defendants to take possession of his interest in the cargo. But supposing,* for the present, that the assignment covers his interest, are the defendants liable to account for the proceeds, if they have paid it away under the trusts of the assignment before notice to them of the complainant’s claim ? The deed of assignment directs the whole proceeds of the assigned property to be applied first to the payment of'certain .preferred debts, and the surplus, if any, to the payment of such other debts as might be preferred within six months. The legal estate in the cargo of the Eliza passed to-the defendants; the plaintiff’s claim was his equitable interest under the agreement: so soon as this was brought home to the knowledge of the defendants, if they then had the cargo or its proceeds in possession, they became his trustees, and liable to account to him for his interest. But if they had paid away the proceeds before notice, there was nothing in their hands on which the trust could attach. For, it is their possession of that which in equity belongs to the plaintiff, which turns their legal estate into a trust for him. If, before they knew of his rights, they had, in the discharge of their duties, parted with the fund, they are not liable to account to him for that in which they had a legal estate, without any knowledge of the secret trust in favor of the plaintiff. The facts in relation to this view of the ease, can only be ascertained by an examination to be had, on the reference to the Commissioner.
It is ordered and decreed, that the Chancellor’s decree be reformed according to the views expressed in this opinion; that the order of reference, made by the Chancellor, be carried into execution; and that the Commissioner do examine and report upon the matter necessary to a correct decision of the defendant’s liability to account, under the second question discussed in this opinion, according to the views therein suggested.
Johnson and Earle, Js., concurred.